**Frederick J. PUESCHEL**

v.

**Robert C. LEUBA et al.**

**Frederick PUESCHEL**

v.

**John R. MANSON, Commissioner of Corrections et al.**

**Nos. 14798, 15893.**

United States District Court,
D. Connecticut.

Oct. 16, 1974.

Herbert Watstein, Bristol, Conn., for petitioner.

Stephen J. O'Neill, Asst. Atty. Gen., Hartford, Conn., for respondents.

## MEMORANDUM OF DECISION

NEWMAN, District Judge.

These related suits involving a habeas corpus petition and Civil Rights Act claims pose interesting questions concerning the relationship between state and federal court adjudicative systems. Both cases arise out of the suspension of a driver's license and the subsequent imposition of a $100 fine. Common undisputed facts are involved.

In June, 1970, plaintiff Pueschel was involved in an automobile accident and failed to comply with the provisions of the Connecticut financial responsibility law then in force, Conn.Gen.Stat. § 14–117. As a result of his failure to comply, the Commissioner of Motor Vehicles suspended his license and registration effective January 6, 1971, pursuant to Conn.Gen.Stat. § 14–117(b). No appeal was taken from the suspension order.[1] Plaintiff continued to drive despite the suspension, and in February, 1971, was arrested for operating a motor vehicle while his license was under suspension, in violation of Conn.Gen.Stat. § 14–215.

In May, 1971, the United States Supreme Court held unconstitutional Georgia's financial responsibility law, which was virtually identical to Connecticut's, Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), and Connecticut thereafter amended its statutes to satisfy the newly-announced requirements of due process. Plaintiff was nevertheless tried and convicted for violating the motor vehicle statute, and in November, 1971, was fined $100. At trial the court refused to allow plaintiff to introduce evidence attacking the suspension order on the ground that he had not been given a hearing before his license was suspended.

Plaintiff then brought an action against two successive Commissioners of Motor Vehicles, under 42 U.S.C. § 1983 (Civil No. 14,798), seeking reinstate-

1. Conn.Gen.Stat. § 14–114(b) made provision for the county of residence of the aggrieved party.

ment of his license and damages; this Court abstained, pending appeal of the criminal conviction in the state courts, both because of comity considerations and possible clarification of state law. The Appellate Division of the Court of Common Pleas affirmed, State v. Pueschel, 30 Conn.Supp. 556, 303 A.2d 117 (1973), on the ground that Bell v. Burson, *supra,* should not be applied retroactively and that the evidentiary rulings at trial had therefore been correct.[2] The Connecticut Supreme Court denied Pueschel's petition for certification for appeal, 34 Conn.L.J. No. 38, 15 (1973), and the United States Supreme Court denied certiorari, sub nom. Pueschel v. State of Connecticut, 414 U.S. 934, 94 S.Ct. 237, 38 L.Ed.2d 163 (1973) (Douglas, J., dissenting).

Rather than pursue the § 1983 action, plaintiff then petitioned for habeas corpus relief, Civil No. 15,893, challenging the $100 fine. The Commissioner of Correction, the Clerk of the Seventeenth Circuit Court, and that Court itself were named as respondents. Cross motions for summary judgment are still pending in the civil rights action,[3] and respondents have moved for summary judgment in the habeas corpus action. All motions may now be decided.

## I.

### The Habeas Corpus Action (Civ. No. 15,893)

◼ The habeas corpus petition encounters an initial obstacle of jurisdiction. A district court may entertain an application for a writ of habeas corpus only in behalf of a person "in custody" pursuant to the judgment of a state court. 28 U.S.C. § 2254(a). The jurisdictional counterpart of the habeas statute, 28 U.S.C. § 2241(c), imposes the same requirement. Petitioner contends that the sole punishment inflicted on

him by the State of Connecticut, a $100 fine, is sufficient interference with his liberty to constitute custody within the meaning of the statute.

◼ Though the concept of custody has been broadly interpreted in recent years to include increasingly less severe forms of restraint, see Preiser v. Rodriguez, 411 U.S. 475, 486, n. 7, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), there still remains as a requirement of the habeas corpus jurisdiction of a district court that the petitioner be subject to some "physical restraint," *id.* at 486, 93 S.Ct. 1827. This need not be actual confinement, but can include supervisory control over the person of the petitioner. See Hensley v. Municipal Court, 411 U. S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973) (release on personal recognizance); Hammond v. Lenfest, 398 F.2d 705 (2d Cir. 1968); *cf.* Dodd v. United States Marshal, 439 F.2d 774 (2d Cir. 1971); Jhirad v. Ferrandina, 355 F. Supp. 1155 (S.D.N.Y.), rev'd on other grounds, 486 F.2d 442 (2d Cir. 1973).

◼ The obligation to pay a fine does not establish "custody" within the meaning of § 2254, Cohen v. Carberry (unreported, Civ. No. 71–2023, 9th Cir. May 23, 1972), cert. denied sub nom. Cohen v. Hongisto, 411 U.S. 964, 93 S.Ct. 2139, 36 L.Ed.2d 684 (1973); Westberry v. Keith, 434 F.2d 623 (5th Cir. 1970); Walker v. Dillard, 353 F.Supp. 566 (W. D.Va.1972); *contra,* Edmunds v. Chang, 365 F.Supp. 941 (D.Hawaii 1973).

◼ In *Hensley,* the Supreme Court placed some reliance, in finding sufficient custody, on the imminence of petitioner's incarceration, inasmuch as he was at liberty on his personal recognizance only by virtue of a stay pending appeal of his conviction and sentence. 411 U.S. at 351, 93 S.Ct. 1571. The imminence of incarceration appears to have been a factor strengthening the custodi-

---

2. *See* Salkay v. Williams, 445 F.2d 599 (5th Cir. 1971); Ortiz v. Depuy, 444 F.2d 429 (3d Cir. 1971); Weaver v. O'Grady, 350 F. Supp. 403 (S.D.Ohio 1972); Pollion v. Lewis, 332 F.Supp. 777 (N.D.Ill.1971).

3. Magistrate Latimer heard argument on the motions, but continued them for decision by this Court for further consideration of the possibility that a three-judge court might be required. This Court then abstained.

al aspect of the personal recognizance, rather than an independent basis of habeas corpus jurisdiction that would have sufficed in the absence of any present restraint on personal liberty. See Whorley v. Brilhart, 359 F.Supp. 539, 542 (E.D.Va.1973).

Pueschel is not now subject to any restraint on his personal liberty. It would be inappropriate to predicate habeas corpus jurisdiction on the speculative possibilities as to whether, following this litigation, he will decline to pay the fine and what the State might do in that event. Collection procedures might not necessarily involve risk of incarceration. Even if the State were to invoke Conn. Gen.Stat. § 18–63, providing for commitment in the event of nonpayment of a fine, it is not clear that incarceration would occur without prior court hearing. See State v. Brown, 5 Conn.Cir. 228, 249 A.2d 672 (1967).

The insufficiency of a fine to support habeas corpus jurisdiction in this case would be entirely free from doubt were it not for language in the recent decision of the Second Circuit in Thistlethwaite v. City of New York, 497 F.2d 339 (2d Cir. 1974). Appellants had been convicted in a state court and sentenced to pay a $10 fine or spend two days in jail. They paid the fine. In rejecting their suit brought under 42 U.S.C. § 1983 to attack the statute under which they were convicted, the Court of Appeals observed that "habeas corpus is generally available in situations similar to the one at hand." *Id.* at 343. It is not clear whether the Court was influenced by the jail alternative of the sentence that had been imposed, but in any event this dictum cannot be regarded as an abandonment of the traditional habeas corpus requirement of impairment of at least some aspect of personal liberty. The dictum in *Thistlethwaite* was followed by this sentence:

> Should the appellants show "possible adverse collateral effects" of their conviction, they can gain a federal hearing by that route [habeas corpus]. Benton v. Maryland, 395 U.S.

784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1968); *see also* Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); and Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968). *Ibid.*

*Benton* and *Sibron* were before the Supreme Court on direct review from judgments of conviction; the existence of adverse collateral effects was relied upon to meet the objection that their appeals were not justiciable or were moot because the sentence in *Benton* was concurrent and the sentence in *Sibron* had been served. *Carafas* did involve review of a denial of habeas corpus relief. The Court also relied on adverse collateral effects to answer a claim of mootness based on the petitioner's release, but the Court's opinion was careful to observe that the mootness issue arose as to a case that had initially invoked the district court's habeas corpus jurisdiction, stating that "once the federal jurisdiction has attached in the District Court, it is not defeated by the release of the petitioner . . . ." 391 U.S. at 238, 88 S.Ct. at 1560. It would thus be unwarranted to conclude that *Thistlethwaite*, which relies on *Carafas*, intended to permit habeas corpus jurisdiction to rest solely on the presence of adverse collateral consequences, even if federal jurisdiction had not been properly invoked because a petitioner was not under some form of custody.

In the absence of any indication that Pueschel properly invoked the habeas corpus jurisdiction of this Court, his petition for a writ of habeas corpus must be dismissed.

## II.

### *The Civil Rights Action*
### *(Civ. No. 14,798)*

Plaintiff's complaint seeks an injunction ordering the Commissioner to reinstate his driver's license "retroactive as of January 6, 1971," a declaration that the suspension of the license was void, and damages of $25,000. These claims pose perplexing questions concerning the

availability of a § 1983 suit following a state criminal conviction and, if the suit is proper, the defense of collateral estoppel arising from the criminal case.

■ Preliminarily, it should be observed that Pueschel has no current controversy with the Commissioner concerning his present right to operate a motor vehicle. The Commissioner has acknowledged in an affidavit of his subordinate that Pueschel has been entitled to have his license reinstated upon his request, without a hearing, ever since November 17, 1972 (the end of the one-year period for which his license was suspended upon his conviction). Though plaintiff has apparently not availed himself of this opportunity, his failure to seek what the Commissioner stands ready to give him cannot create a justiciable controversy concerning his present right to drive.

The only justiciable aspect of plaintiff's claims for injunctive and declaratory relief concerns whether the suspension of his license in 1971 was proper. Since plaintiff obviously has no present interest in driving in 1971, his claims are justiciable only to the extent that they attack the validity of the suspension order, an attack plaintiff makes in order to contest his conviction and his obligation to pay the $100 fine. Technically, his suit against the Commissioner is concerned only with the validity of the suspension order, but given Pueschel's present right to drive, this suit would be entirely abstract unless it became the predicate for a further suit against other defendants in which Pueschel directly sought to expunge his conviction and his fine. Thus, the justiciability of this suit turns on whether a § 1983 suit can be used to attack a state conviction.

■ As a general rule a § 1983 suit cannot be used to attack a state conviction, a proposition apparently accepted by both the majority and minority opinions in Preiser v. Rodriguez, supra. See, e. g., Goss v. Illinois, 312 F.2d 257 (7th Cir. 1963); Hogan v. Lukhard, 351

F.Supp. 1112 (E.D.Va.1972). But the unavailability of § 1983 to attack state convictions is predicated not on any deficiency in the Civil Rights Act, but on the exclusiveness of the remedy of habeas corpus. Cf. Preiser v. Rodriguez, supra, 411 U.S. at 489, 93 S.Ct. 1827. The cases ruling § 1983 unavailable have been premised, often explicitly, on the availability of habeas corpus. What force should the traditional rule have in the unusual case like this where the imposition of a fine without any aspect of custody precludes the use of the habeas corpus remedy?

■ It might be contended that Congress, in enacting the habeas corpus remedy, not only intended it to be the exclusive vehicle for district court collateral inquiry into the validity of state convictions but also intended that those convictions not subject to a habeas remedy, i. e., without custody consequences, should be immune from district court collateral inquiry. In the absence of helpful legislative history, it seems at least as plausible to argue that the unavailability of habeas corpus to attack a sentence involving only a fine is a sufficient reason for permitting collateral inquiry via § 1983. This is especially appropriate in this case, since the principal reason for construing the habeas corpus remedy to be exclusive of a § 1983 action—requiring exhaustion of state court remedies —has been satisfied by this plaintiff.

If a § 1983 action can be used to attack directly or, as here, indirectly, a conviction with no custody consequences, there remains the issue of whether plaintiff's claims are barred by collateral estoppel arising from the state court litigation. In the Connecticut Circuit Court Pueschel sought to defend the charge of driving while his license was under suspension on the ground that Bell v. Burson, supra, should apply retroactively to invalidate the suspension order. He specifically raised this issue on appeal, also contending that invalidity of a suspension order is a defense to a criminal charge of driving under sus-

pension. The Court of Common Pleas disagreed with Pueschel as to the retroactivity of *Bell* and therefore did not reach the second question. In this proceeding, the first issue on the merits is again whether *Bell* is retroactive.

■ The principle of collateral estoppel is generally held to bar a plaintiff in a § 1983 suit from relitigating issues, including issues of federal law, decided in prior state court litigation. See, *e. g.*, Lackawanna Police Benevolent Assn. v. Balen, 446 F.2d 52 (2d Cir. 1971), and cases cited in Friendly, Federal Jurisdiction: A General View, 101–02 n. 113 (1973). However, a caution against an inflexible application of this rule has been forcefully argued. See Brown v. Chastain, 416 F.2d 1012, 1014 (5th Cir. 1969) (Rives, J., dissenting), cert. denied, 397 U.S. 951, 90 S.Ct. 976, 25 L. Ed.2d 134 (1970). The precise question here is whether collateral estoppel should apply in a § 1983 action where the prior state litigation was a criminal prosecution. Since § 1983 is generally considered unavailable to attack state convictions, it is not surprising that this question has arisen infrequently.

In at least two instances a prior state criminal conviction has been given preclusive effect in a § 1983 suit. Thistlethwaite v. City of New York, *supra*, and Goss v. Illinois, *supra*. Neither is dispositive here, however, since in both cases (perhaps unwarrantedly in *Thistlethwaite*) the courts applied collateral estoppel in partial reliance on the availability of a habeas corpus remedy, a circumstance lacking in this case. Moreover, in addition to the generalized concerns expressed by Judge Rives in Brown v. Chastain, *supra*, more pointed misgivings have been expressed about collateral estoppel from state criminal cases arising in § 1983 suits. See Lauchli v. United States, 405 U.S. 965, 92 S.Ct. 1182, 31 L.Ed.2d 241 (1972) (Douglas, J., dissenting from denial of certiorari); Rosenberg v. Mar-

tin, 478 F.2d 520, 525 (2d Cir. 1973) ("It might be contended . . . that . . . a state criminal judgment should have no more effect by way of issue preclusion in a federal civil rights action than it would in federal *habeas* . . . ."); Thistlethwaite v. The City of New York, *supra*, 497 F.2d at 345 (Oakes, J., dissenting).

■ Two special considerations have been identified. Justice Douglas in *Lauchli* queried whether collateral estoppel could be invoked to deny a Civil Rights Act plaintiff his right to a jury trial on his damage claim arising from a search previously ruled valid by the trial judge in the criminal case. That concern is inapplicable here because the retroactivity of Bell v. Burson, *supra*, is an issue of law for the court.[4]

■ The second factor bearing on the appropriateness of collateral estoppel is whether resort to the state forum was a matter of plaintiff's choice or the involuntary consequence of his being a defendant in a state criminal prosecution. Though *Thistlethwaite* discounts the significance of an involuntary election of the state tribunal, 497 F.2d at 342, this factor has been emphasized not only by Judge Rives in Brown v. Chastain, *supra*, 416 F.2d at 1019, but also by Chief Justice Burger and Justice White, dissenting from the denial of certiorari in Florida State Board of Dentistry v. Mack, 401 U.S. 960, 961, 91 S.Ct. 971, 28 L.Ed.2d 245 (1971). See Note, Res Judicata: Exclusive Federal Jurisdiction and the Effect of Prior State-Court Determinations, 53 Va.L.Rev. 1360 (1967).

■ To whatever extent relevant, the choice of forum consideration does not lessen the appropriateness of collateral estoppel in this case. The criminal prosecution was not plaintiff's initial opportunity to challenge the validity of his suspension order. Once that order was entered, plaintiff had the right to challenge its validity in the state

---

4. Collateral estoppel will not impair Seventh Amendment rights here despite plaintiff's claim for damages. Even if plaintiff prevailed on the retroactivity of *Bell*, his damage claim would fail as a matter of law, *see* text, *infra*.

courts [5] and then seek review of his federal question in the United States Supreme Court, as did Mr. Bell, Bell v. Burson, *supra,* or to proceed directly into the United States District Court, as did Mr. Latham, Latham v. Tynan, 404 U.S. 807, 92 S.Ct. 117, 30 L.Ed.2d 39 (1971), vacating and remanding, 435 F. 2d 1248 (2d Cir. 1970). Instead plaintiff elected to forego a challenge to the suspension order, continue driving, and thereby invite a likely state criminal prosecution. It may well be that, had the state courts agreed with plaintiff on the retroactivity of Bell v. Burson, *supra,* he would have been entitled to assert invalidity of the suspension order as a defense to the criminal charge, see Horodner v. Cahn, 360 F.Supp. 602, 605, n. 6 (E.D.N.Y.1973), though whether a suspension order ought to be analogized to a court injunction that one disobeys at his peril, see United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947), is not free from doubt. See Ferguson v. Gathright, 485 F.2d 504, 507 (4th Cir. 1973); Franklin v. District of Columbia, 248 A.2d 677, 679 (D.C.App.1968). But having chosen, in a quite realistic sense, to let the state process unfold, he cannot now avoid the preclusive effect of the adverse state court adjudication. Even if his flouting of the suspension order might not have precluded plaintiff from attacking its validity in the state courts, it is surely a circumstance that should bar a second round of litigation in the federal courts. Moreover, unlike the plaintiffs in *Thistlethwaite,* who sought to litigate a statute of continuing enforceability, this plaintiff's suit concerns action taken pursuant to a statute long since repealed and replaced. Under all the circumstances, collateral estoppel should bar the suit.[6]

 Plaintiff's claim for damages is foreclosed not only by collateral estoppel, but on the independent ground that the defendant Commissioners have a good faith defense for action taken in their official capacity under a statute valid at the time they acted. Tucker v. Maher, 497 F.2d 1309, 1313 (2d Cir. 1974).

Accordingly, the petition in Civil No. 15,893 is dismissed, and defendants' motion for summary judgment in Civil No. 14,798 is granted.

---

5. Had the suspension order been appealed, the Court of Common Pleas was entitled to stay the order pending appeal. Dempsey v. Tynan, 143 Conn. 202, 120 A.2d 700 (1956).

6. Collateral estoppel applies here notwithstanding the lack of identity between the parties in this suit and the criminal case.

"Under modern notions with respect to issue preclusion, it is of no moment that the adverse party in the criminal case was the State rather than the police officer who is the defendant here." Rosenberg v. Martin, *supra,* 478 F.2d at 525. Sufficient similarity of interests exists here.